UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 10-20242-CR-ALTONAGA

**UNITED STATES OF AMERICA**,

    Plaintiff,
v.

**JOHN J. UTSICK**,

    Defendant.
_____/

**ORDER**

The initial Indictment [ECF No. 3] in this case was filed April 6, 2010; the operative Superseding Indictment ("Superseding Indictment" or "the Indictment") [ECF No. 8] was filed November 30, 2010. The case was unsealed by Order dated August 25, 2014 [ECF No. 15]. Defendant, John Utsick ("Defendant" or "Utsick"), was extradited from Brazil in December 2014; had his initial appearance on December 8, 2014 (*see* [ECF No. 18]); and was arraigned on February 17, 2015 (*see* [ECF No. 30]). From the time of the Superseding Indictment, Defendant has had several attorneys represent him. (*See* Order granting motion to appear *pro hac vice* [ECF No. 12]; Notice of Temporary Appearance as Counsel [ECF No. 17]; Federal Public Defender notices [ECF Nos. 29, 34, 40]; Motion to appear *pro hac vice* [ECF No. 113]; Order granting motion to appear *pro hac vice* [ECF No. 120]; and Notice of Attorney Appearance [ECF No. 142]).

In an Order dated February 17, 2015 [ECF No. 33], the Court set a trial date of March 17, 2015. In all, the trial date has been continued four times (*see* Orders [ECF Nos. 46, 58, 88, 140, 150]), all at the request of the Defendant. The latest Order Continuing Trial [ECF No. 181] was

necessary given Defendant's untimely filing of motions to dismiss, discussed below, and establishes a trial period commencing June 13, 2016.

Before the Court now, and the subject of this Order, is one of Defendant's recent motions to dismiss. Defendant first filed a "Motion to Dismiss for Government Misconduct and Unconstitutional Arrest" ("First Dismissal Motion") [ECF No. 109] on December 4, 2015. The Court denied that First Motion by Order dated December 7, 2015 [ECF No. 110] because it lacked any legal citations or memorandum of law. On March 31, 2016, Defendant filed a "Preliminary Omnibus Motion to Dismiss and Notice of Request for Leave to Supplement" ("Second Dismissal Motion") [ECF No. 168]. Following oral argument, the Court denied the Second Dismissal Motion by Order on April 5, 2016 [ECF No. 171], as the motion was largely unsupported by any exhibits or other evidentiary submissions.

Defendant filed a Renewed Omnibus Motion to Dismiss the Indictment ("Third Dismissal Motion" or "the Motion") [ECF No. 173] on April 22, 2016. Defendant also filed a Renewed Motion to Dismiss Indictment for Unconstitutional Government Interference . . . ("Fourth Dismissal Motion") [ECF No. 180], on April 26, 2016. Defendant briefly previewed the substance of the Fourth Dismissal Motion in the Third Dismissal Motion, explaining further elaboration would be supplied in the Fourth Dismissal Motion. (Third Dism. Mot. 3, n.4). The Court addresses the several arguments raised in the Third Dismissal Motion; the Fourth Dismissal Motion will be the subject of a separate order once that motion is fully briefed.[1]

In the Third Dismissal Motion (hereinafter, "Motion"), Defendant moves to dismiss the Indictment on five grounds: 1) unconstitutional interference with the right to counsel and/or

---

[1] More recently, on May 17, 2016, Defendant filed a Motion for Kastigar Hearings . . . ("Fifth Dismissal Motion") [ECF No. 191]; and on May 20, 2016, a Motion for *Quinn* Hearing . . . ("Sixth Dismissal Motion") [ECF No. 197]. Both of these also request as alternative relief that the Court dismiss all charges. The Sixth Dismissal Motion has been referred to Magistrate Judge John O'Sullivan (*see* Order [ECF No. 199]); the Fifth Dismissal Motion will be addressed by separate order once it is fully briefed.

2

attorney-client privilege; 2) a pattern of prolonged government misconduct and abuse of the civil process; 3) prolonged and unnecessary pre-indictment and post-indictment delay; 4) illegal procurement of Defendant's arrest in violation of the applicable extradition treaty; and 5) providing false statements in order to seal the indictment just before the statute of limitations expired. (*See* Mot. 3–4). Defendant also seeks various evidentiary exclusions in addition to, or in the alternative to, the Indictment's dismissal. (*See id.* 4). The Government filed its Response . . . ("Response") [ECF No. 189] on May 16, 2016; Defendant filed his Reply . . . ("Reply") [ECF No. 201] on May 27, 2016.

Defendant's Motion is a largely unstructured, stream-of-thought narrative that does not conform to even its own nominal roadmap, dispersing parts of its five arguments among three titled sections. (*See generally* Mot.). To the extent Defendant's arguments support the bullet-pointed assertions paraphrased above — and are not duplicative of the issues presented in the Fourth Dismissal Motion — the Court examines them in the order in which they are broached.

### A.  Sealed Indictment

In the first section, Defendant makes at least two needlessly intertwined arguments regarding the Indictment: 1) the Government improperly waited to seek an indictment; and 2) the Government improperly sealed the Indictment. (*See* Mot. 4–10). The Court analyzes the former argument in conjunction with the otherwise repetitive separate claim regarding unnecessary delay below.

Looking to just the sealing issue for now, Defendant accuses the Government of improperly sealing the Indictment to withhold its existence from him "by falsely stating to the court that the defendant was a threat to flee the jurisdiction." (*Id.* 7). Defendant claims he moved to Brazil, "where his residence appeared to be well known to both the U.S. and Brazilian

government[,]" "as part of his attempt to continue his promotions business in Latin America." (*Id.* (alteration added)). This is the entirety of Defendant's argument for why sealing the Indictment was improper. Still, by combining the unsupported assertion he was not a flight risk with a litany of unrelated allegations which form the separate and separately discussed "pattern of misconduct" argument, Defendant challenges not just the sealing, but the propriety of the Indictment itself. (*See id.* 8 ("[I]t is difficult, at best, to discern any motive other than bad faith for the government's delay and tactics in bringing this case. An indictment obtained under such bad faith abuse of process . . . cannot stand and is offensive to universal notions of justice such that dismissal is further warranted under the court's [sic] own supervisory powers." (alterations added) (citing *Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988)))).

The Government's version of the facts is different and elucidates reasonable cause to seal the Indictment. The Government notes Defendant was not under arrest when he was charged with a massive fraud scheme resulting in a loss of $207 million. (*See* Resp. 2). Given the alleged serial frauds, and based on Defendant's advanced age and the apparent certainty of spending the remainder of his life in prison if convicted, the Government argues it had reason to believe Defendant would likely attempt to thwart his arrest and/or tamper with witnesses and evidence if he knew his prosecution was imminent. (*See id.*).

Supporting this belief, Defendant has admitted he left the United States for Brazil and refused to return — or set foot in any other country from which he might face extradition — for fear of being arrested. (*See id.* 3). In fact, he previously refused to appear in a related civil matter in this District, or even in the country of his choosing, on that explicit basis. (*See id.*). Additionally, the apparent abandonment of his Miami condominiums, his dispatching of people to attempt to retrieve and send him his possessions, and his maneuvers to have his pension

deposited in his account for him *in absentia* further corroborate the Government's theory Defendant did not lawfully relocate to Brazil merely to pursue business opportunities, and would not have cooperated with authorities had he known of the Indictment. (*See id.* 4).

In his Reply, Defendant refutes the Government's narrative as a "post-hoc rationalization," faulting the Government for not presenting any affirmative evidence of the risk Defendant might flee or compromise the investigation if the Indictment had not been sealed. (*See* Reply 3–5). Although Defendant does challenge some of the Government's factual assertions, such as the reason behind his decision to relocate to Brazil — and with an apparent one-time offer to surrender voluntarily, much of this argument disputes what inferences the Court should draw from the facts, not the facts themselves. (*See, e.g.*, *id.* 5 n.4). Because Defendant does not directly address, no less refute, all of the facts from which the Government drew the conclusion sealing the Indictment was warranted, considering the situation as a whole, the Court still finds that position was reasonably justified.

The only case Defendant cites in the text of his argument is unhelpful. *See generally Bank of Nova Scotia*, 487 U.S. 250 (holding district courts may not dismiss an indictment for non-prejudicial errors). In the bullet-point preview of this argument, Defendant also cites, without explanation, five additional cases. (*See* Mot. 4 (citing *Toussie v. United States*, 397 U.S. 112 (1970); *United States v. Thompson*, 287 F. 3d 1244 (10th Cir. 2002); *United States v. Edwards*, 777 F.2d 644 (11th Cir. 1985); *United States v. Broe*, 695 F. Supp. 2d 1361 (S.D. Fla. 2010); *United States v. Goff*, No. Crim. A. No. 2:07cr322-MHT, 2009 WL 197972 (M.D. Ala. Jan. 27, 2009)). None of these cases both supports Defendant's argument and is so closely analogous to the instant matter as to compel a finding in Defendant's favor without explanation.[2]

---

[2] Quite the opposite, in fact: in *Edwards,* the Eleventh Circuit stated "the government may properly request the sealing of an indictment for a period beyond the statute of limitations . . . even though the

In the Reply, Defendant excoriates the Government for failing to address the purported statute of limitations violation. (*See* Reply 11–12). To the extent the Government failed to respond to the argument that now appears in the Reply, it did so because the argument does not appear in the Motion. (*See* Mot. 4–10). Rather, Defendant merely mentioned the statute of limitations in a section header (*see id.* 4), and in his lengthy factual narrative (*see id.* 7). At the end of this section, Defendant does cite *Thompson* and *Broe* for the proposition: "The prejudice caused by the improper sealing of the indictment is a violation of the five year statute of limitations period for the charged offenses" (*id.* 10), but there is no accompanying analysis to which the Government could have responded in any more detail than it did (*see* Resp. 14–15).

In contrast, *Edwards* demonstrates the timing of the sealing of the Indictment was not inherently improper, *see* 777 F.2d at 647, and Defendant fails to provide any binding authority to alter the Court's conclusion here. Because the Government has provided a persuasive rationale for having obtained and sealed the Indictment within the statute of limitations, and Defendant makes no legally supported argument to the contrary, the Court finds no cause to dismiss the Indictment on these bases.

**B. Unnecessary Delay**

Defendant argues the Government's alleged delay in prosecuting not only resulted in prejudice, but also provides "a separate basis for dismissal of the charges from that based on government misconduct." (Mot. 10). Broadly, Defendant accuses the Government of waiting four years after the initiation of the parallel civil investigation, and a year after the termination of

---

defendant is not arrested and the indictment is not made public until after the end of the statutory limitations period." 777 F.2d at 647 (alteration added). Furthermore, *Edwards* summarizes established precedent holding the government may properly seal an indictment where "'the public interest requires it, or for other sufficient reason,' or 'for other sound reasons of policy.'" *Id.* (footnote call number omitted) (citing *United States v. Southland*, 760 F.2d 1366, 1379–80 (2d Cir. 1985)). The present scenario appears to fall squarely within this precedent.

the resulting civil action, before seeking an indictment. (*See id.* 5). Defendant further accuses the Government of failing to prosecute for three more years, before purportedly misleading Brazilian authorities into suddenly arresting Defendant under false pretenses — only then to allow him to languish needlessly in a Brazilian prison for another year. (*See id.* 8–9).

Defendant again unnecessarily braids multiple arguments the Court must attempt to untangle here. Defendant asserts "[b]y deliberately delaying indictment while menacing to arrest at any moment, the government manipulated the civil process to obtain testimony or sanctions unavailable in a purely criminal investigation and unconstitutionally delayed the criminal proceedings so as to deprive the defendant [of] his right to counsel." (*Id.* 6 (alterations added)). To the extent these arguments are developed in the Motion, they are duplicative of Defendant's more thorough presentation of the right-to-counsel/manipulation-of-a-civil-case-to-procure-evidence arguments found in the Fourth Dismissal Motion.[3] (*See generally* Fourth Dism. Mot.). The Court ordered the Government to submit further briefing in response to that motion (s*ee* Order [ECF No. 195]), so these issues will be dealt with in a separate order to follow.

As to just the matter of post-indictment delays, Defendant faults the Government for waiting to seek extradition, the additional delay caused by the Government's "failed legal strategy in obtaining reversal of the Brazilian Supreme Court's partial denial of the Extradition [sic] request," and "the inexplicable delay in violation of the Treaty in picking up defendant from the Brazilian prison system." (Mot. 11 (internal citation omitted)). Taken together, Defendant argues the facts "lead[] to the ineluctable conclusion that the government has violated the Defendant's Sixth Amendment constitutional right to Speedy Trial." (*Id.* (alteration added)).

---

[3] Defendant goes on to fault the Government for not responding to these arguments in the Response, even though Defendant failed to adequately brief them in the Motion. (*See* Reply 12–13).

The Motion leans heavily on its emphatic factual narrative, whereas the Government applies the test in *Barker v. Wingo*, 407 U.S. 514 (1972), further articulated in *Doggett v. United States*, 505 U.S. 647 (1992), far more thoroughly than does Defendant — and far more persuasively. (*Compare* Resp. 17–22, *with* Mot. 11). Under this test, a court balances four factors to determine whether dismissing an indictment is an appropriate remedy for a delay between the indictment and the trial: 1) the length of the delay; 2) the reason for the delay; 3) the defendant's assertion of his right to a speedy trial; and 4) prejudice resulting from the delay. *See Barker*, 407 U.S. at 530.

As to the first factor, delay length, Defendant accurately states this case's "delay is four times longer than the [one-year] threshold delay triggering Speedy Trial analysis." (Mot. 11 (alteration added) (citing *Doggett*, 505 U.S. at 652 n.1)). Defendant implies this factor is dispositive or strongly favors dismissal, but as his cited case explains, delays exceeding that threshold are merely subjected to a full analysis under the remaining factors. *See Doggett*, 505 U.S. at 652 n.1, 657–58. The Government correctly notes courts have found a delay of five and a half years, as elapsed here, did not warrant dismissal. (*See* Resp. 17–18 (citing *Barker*, 407 U.S. 514; *United States v. Hayes*, 40 F.3d 362 (11th Cir. 1994))). Therefore, the Court moves on to address the remaining factors.

With regard to the second factor, the reason for delay, the Government explains its extradition request was slowed by unavoidable changes in personnel and the time necessary to bring new people up to speed on a case of this complexity, but otherwise progressed with purpose. (*See* Resp. 5–6; 19–20). The Government further refutes its extradition appeals were improper: after the Brazilian court decided to grant extradition on all but one count, Defendant and the Government *each* initially appealed that order, after which the Government sought a

second appeal, as is legally allowed. (*See id.* 7). According to the Government, once that court's decision was final, the subsequent delay was not a result of deliberate action, but rather a consequence of compliance with treaty obligations, culminating in Defendant's proper extradition within the applicable 60-day deadline.[4] (*See id.* 7–8). Defendant's argument and submissions do not prove otherwise, so this factor weighs against dismissal.

As to the third factor, assertion of the right to a speedy trial, Defendant argues he could not have invoked this right before he knew of the Indictment or while he was in Brazilian custody. (*See* Mot. 11). The Government concedes as much. (*See* Resp. 18). However, as above, the pre-extradition delay will be addressed in a subsequent order, and Defendant makes no argument to justify his failure to invoke this right during the post-extradition delay. In contrast to Defendant's brief treatment of this issue, the Government's thorough discussion of this factor is decisive.

The Government correctly recounts in *Barker*, the U.S. Supreme Court found the government lacked a good reason for its delay, but still held dismissal was inappropriate largely because the defendant had not taken any steps to demonstrate his desire for a speedy trial, as evidenced by his failure to object to the government's repeated requests for a continuance. (*See id.* 17–18 (citing 407 U.S. at 534–35)). The situation here is even starker because the Government has repeatedly indicated its preparedness to proceed to trial while Defendant has sought to prolong the proceedings any way he can. Defendant's assertions of prejudicial delay are severely undercut by the fact he himself has substantially manipulated and extended the timeline of this action by requesting six continuances to date and unabashedly filing repeated, repetitive motions beyond all deadlines given by the Court and on the eve of trial — even though

---

[4] As discussed below in the analysis of Defendant's argument the extradition process was violated and/or misused, Defendant's assertion the Government exceeded the 60-day extradition window is based on a misreading of the applicable treaty language. (*See* Resp. 7–8).

the underlying actions both occurred and were known to him years ago. Because Defendant has not previously asserted his right to a speedy trial at any time during his 17 months since returning to the United States — and because he has caused significant delay during that period, to boot — the Court is not persuaded by this eleventh hour protestation now. *See Barker*, 407 U.S. 534–35. This factor strongly weighs against dismissal.

The fourth factor is prejudice. Because Defendant is entirely responsible for what delays have occurred since his extradition, there is no prejudice for any delay since then. Thus, the parties both focus their arguments on whether Defendant's incarceration in Brazil was prejudicial.

Defendant insists he was prejudiced by the "brutal and inhumane treatment" to which he was subjected in a Brazilian prison. (*See* Mot. 14). However, Defendant's decision to relocate to Brazil was the voluntary and foreseeable cause of his incarceration in a Brazilian prison in the event of attempted extradition, and Defendant was well aware of this risk. (*See* Resp. 20–21). Defendant argues his time in a Brazilian jail was extended by the Government's two appeals of the Brazilian ruling regarding the extradition request. (*See* Mot. 2). Yet, Defendant himself filed an appeal, so his incarceration would have been extended during that process regardless, and there is nothing inherently improper about the Government's decision to pursue an appeal within its legal rights (*see* Resp. 20–21).[5]

Defendant also asserts he suffered additional anxiety and oppression in Brazilian prison on account of the inclusion of unwarranted child molestation charges in the extradition documentation provided to the Brazilian government. (*See* Mot. 11). The Brazilian Supreme Court itself stated those charges "seem to have resulted from clerical error in the application"

---

[5] The Government also points out Defendant remained out of prison during the time the Government worked on the extradition request, mitigating what would otherwise have been a longer prison stay. (*See* Resp. 21).

(Resp. 6 (citation omitted)), and clerical error is an insufficient ground to dismiss an indictment on the eve of trial. Therefore, whether or not this factor is of diminished value (*see* Resp. 20 (citations omitted)), it does not weigh strongly in favor of dismissal. *See Barker*, 407 U.S. 534–35.

In his Reply, Defendant for the most part just reiterates, and contests the Government's explanations for, the facts showing purportedly improper delays. (*See* Reply 8–11). The only legal arguments in the Reply attempt to factually distinguish *Barker* and *Hayes*. (*See id.* 8–9). Even if Defendant can factually distinguish these cases, the Government's argument — like the Court's analysis — remains unchanged, because it does not rest on factual analogies to those cases. *Barker* is most relevant for laying out the applicable test; *Hayes* is cited primarily to show delays of the length at issue here can be caused by good faith attempts to extradite and are not *ipso facto* unconstitutional. (*See* Resp. 18). The primary significance of these cases is to show Defendant cannot merely point to the length of delay and declare a violation has occurred; rather, the Court must walk through the full analysis outlined in *Barker*, as it has done. As a result of that inquiry, on balance, the Court does not find dismissal of the Indictment is an appropriate remedy here.

### C. Procurement of Arrest and Extradition

Defendant claims dismissal is warranted on account of the Government,

> illegally procuring the defendant's arrest in violation of the applicable Extradition Treaty by making false statements concerning the charges faced by the defendant and regarding his alleged flight from prosecution, and for further violating the Treaty by extending the defendant's incarceration by six months in the Brazilian prison system after the government's request for extradition was granted.

(Mot. 3).

As for the purportedly nefarious inclusion of trumped up charges to secure extradition, again, the Brazilian Supreme Court itself stated those charges "seem to have resulted from clerical error in the application" and thus played no role in its decision to grant extradition. (Resp. 6 (citation omitted)). Defendant's insistence in the Reply that "the government has failed to address its outrageous conduct in making false statements to Brazilian officials" (Reply 13 (capitalization omitted)), completely ignores this explanation. And as for extending the length of Defendant's Brazilian incarceration, again, Defendant filed his own appeal and has presented no authority to challenge the fact the Government's second appeal was within its legal rights.

In his Reply, Defendant also accuses the Government of ignoring salient issues. For example, Defendant argues

> [a]s Mr. Utsick's lawyers have pointed out . . . , normally the Brazilian authorities would not have arrested Mr. Utsick on mail fraud charges alone. . . . The government does not address the fact that its false statements caused Mr. Utsick's arrest, nor the legal consequences of this in this Court. An illegal arrest pursuant to a Treaty request based on false claims violates *jus cogens* norms of international law and deprives the Court of personal jurisdiction.

(Reply 5–6 (alterations added) (citing *United States v. Struckman*, 611 F.3d 560, 571 (9th Cir. 2010))).

Defendant's support for the assertion he would not have been arrested for mail fraud alone is two affidavits by Brazilian lawyers stating "the defendant *probably* would not have been arrested by Brazilian authorities for mail fraud." (Reply Exs. W, Y [ECF Nos. 201-18, 201-19] (emphasis added)). "Probably" by definition does not prove anything. But even if Defendant could definitively show Brazilian authorities would not have arrested him on that charge alone,

mail fraud is a crime, and Defendant fails to provide any support for the argument being arrested for committing a crime constitutes an "illegal arrest." (Reply 6).[6]

As for the assertion the delay of more than 60 days violated the Extradition Treaty (*see* Mot. 15 (citing Extradition Treaty ("Treaty") [ECF No. 173-8] Art. XIII)), the Government correctly points out Defendant starts counting from the date of the final judicial order approving extradition, whereas the Treaty states the deadline begins running upon receipt of formal, final communication of approval from the surrendering *state*, not its judicial system (*see* Resp. 7). That communication was not received until October 6, 2014 — within 60 days of Defendant's extradition on December 5, 2014. (*See id.* 7–8; Ex. Q to Resp. [ECF No. 189-17]).

In his Reply, Defendant argues "the government does not refute these salient matters; instead it includes on a statement from its Legal Advisor that it picked up Mr. Utsick on the last possible day permitted by its interpretation of the Treaty." (Reply 6 (citation omitted)). Defendant appears to miss the point. If he was extradited "on the last possible day permitted," his extradition was proper, and there is no violation of the Treaty; this does in fact refute the salient matter. Moreover, Defendant's argument for dismissal based on the impropriety of his extradition is premised on his misreading of the Treaty; only in the event of a treaty violation may he rely on Article XIII's provision "the person **shall** be set at liberty." (Mot. 15 (alteration in original) (citing Treaty Art. XIII)). Because Defendant has not identified any treaty violation regarding his extradition, his remaining, primarily evidentiary, concerns do not provide a ground for dismissal of the Indictment. (*See* Resp. 22–23).

---

[6] It is also long past the proper time for Defendant to challenge personal jurisdiction in this Court. (*See also* Reply 13–15).

### D. Interference with Right to Counsel

Defendant moves for "dismissal of the indictment for unconstitutional interference with the defendant's right to counsel or in the alternative exclusion of all evidence tainted by violations of the attorney-client privilege and interference with the defendant's right to counsel with an inquiry into the contact of each witness with government investigators." (Mot. 3 (citations omitted)). Defendant acknowledges this argument is duplicative of, and articulated at much greater length in, the Fourth Dismissal Motion. (*See id.* 3 n.4). Defendant explains this argument is nonetheless "referenced here because the totality of the government's conduct must be considered in assessing the impact on the defendant and the trial and in assessing the legality and constitutionality of what the government has done in this case." (*Id.*). Defendant fails to explain what legal theory requires such consideration in whole. And even if Defendant's statement is true, it does not enable a full analysis of this argument as to the instant Motion because neither party has provided adequate briefing on this matter.[7] At best, the facts at issue for this argument can be taken into account in regard to the "pattern of prolonged misconduct" argument discussed below; on its own, Defendant's assertion does not warrant specific analysis here.[8]

### E. Pattern of Prolonged Misconduct

Defendant moves for "dismissal of the indictment for a pattern of prolonged government misconduct including the abuse of the civil process causing irremediable prejudice to the defendant." (Mot. 3 (citations omitted)). The analysis supporting this argument, to the extent it appears in the Motion, is buried within the section nominally devoted to the already jumbled

---

[7] Defendant's inclusion of this argument in his Reply does not alter this situation. (*See* Reply 6–8).

[8] Furthermore, Defendant's evidentiary concerns are not addressed in this Motion seeking dismissal of the Indictment.

statute of limitations/sealed indictment argument. (*See id.* 5–8). And none of the cited cases speaks to a pattern of prolonged misconduct or compels a finding for Defendant.

For example, Defendant argues the Government improperly opposed his requests to access business funds to support his legal defense, and cites *Luis v. United States*, 136 S. Ct. 1083 (2016), to assert "[t]he Supreme Court has since made clear the defendant has at that time a constitutional right to attorneys [sic] fees from business assets under these circumstances." (Mot. 6 (alteration added)). As the Government points out, *Luis* concerned the availability of a defendant's own, untainted *personal* assets to pay for his defense; here, not only did Defendant seek to use business assets, he sought business assets that allegedly are tainted at best, and the ill-gotten proceeds of a likely Ponzi scheme at worst, to fund his legal defense — while the business's outstanding liability to investors still totaled $169 million. (*See* Resp. 16). Thus, *Luis* does not support Defendant's argument. In fact, *Luis* explicitly states "the Government may well be able to freeze before trial 'tainted' assets — *e.g.*, loot, contraband, or property otherwise associated with the planning, implementing, or concealing of a crime." *Luis*, 136 S. Ct. at 1085. This argument does not reveal a single instance of misconduct here, no less a pattern.

Defendant also cites *United States v. Scrushy*, 366 F. Supp. 2d 1134 (N.D. Ala. 2005), as a purportedly analogous example of misuse of civil proceedings in a criminal trial. (*See* Mot. 7). Yet the Government is correct that *Scrushy* "has nothing whatsoever to do with the dismissal of an indictment, and as such, is completely irrelevant to Utsick's motion." (Resp. 17). Indeed, *Scrushy* held a deposition given in connection with a civil investigation could not be used in a related criminal matter. *See generally* 366 F. Supp. 2d 1134. While *Scrushy* may be relevant to the alternative relief Defendant seeks, as above, the Court does not resolve evidentiary concerns at this time; *Scrushy* provides no support for dismissal of the Indictment.

Similarly, the remaining cases nominally offered in support of this argument via citation — without discussion — in Defendant's bullet-point summary (*see* Mot. 3), do not compel dismissal of the Indictment absent any analysis or explanation. *See Sec. & Exch. Comm'n v. ESM Gov't Sec.*, 645 F. 2d 310 (5th Cir. 1981) (holding enforcement of an administrative subpoena would be improper under delineated circumstances); *United States v. Tweel*, 550 F.2d 297 (5th Cir. 1977) (holding evidence obtained by consent deceptively sought in a civil audit should be excluded from a criminal trial); *Sec. & Exch. Comm'n v. Healthsouth Corp.*, 261 F. Supp. 2d 1298 (N.D. Ala. 2003) (staying civil proceedings pending the outcome of criminal charges and denying the SEC's request to freeze a corporate officer's assets). Defendant fails to show either a pattern of misconduct or support for the argument such a pattern, if it exists, warrants dismissing the Indictment here.

Overall, the Court finds no ground for a dismissal of the Indictment within the Motion. For the foregoing reasons, it is **ORDERED AND ADJUDGED** that the Third Dismissal Motion **[ECF No. 173]** is **DENIED**.

**DONE AND ORDERED** in Miami, Florida this 1st day of June, 2016.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record