UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-cr-20242-ALTONAGA/O'SULLIVAN

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JOHN UTSICK,

    Defendant.
_____/

## ORDER

THIS MATTER comes before the Court on the Defendant's Motion for Quinn Hearing to Compel Testimony of Witness or in the Alternative to Dismiss Charges upon Continued Refusal of Government to Confer Use Immunity (DE# 197, 5/20/16). This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b). See Order Referring Motion to Magistrate Judge (DE# 199, 5/23/16).

## BACKGROUND

### A.    The Indictment and Superseding Indictment

On April 6, 2010, the defendant was indicted on one count of mail fraud in violation of Title 18, United States Code, Section 1341 and two counts of money laundering in violation of Title 18 United States Code Section 1957. See Indictment (DE# 3, 3/24/11). On November 30, 2010, a grand jury returned a Superseding Indictment charging the defendant with nine counts of mail fraud, in violation of Title 18, United States Code, Section 1341. See Superseding Indictment (DE# 8, 3/24/11).

The charges in the Superseding Indictment stem from the defendant's operation of companies which promoted concerts and other entertainment events. See

Superseding Indictment (DE# 8 at 2, 3/24/11). The defendant solicited potential and existing investors to provide funds to these businesses promising fixed rates of return. Id. The defendant encouraged investors to supply new funds or to "roll over" previously invested funds. Id. at 5. The Superseding Indictment describes a Ponzi scheme in which the defendant used funds from new investors to pay older investors. Id. at 6. The Superseding Indictment further alleges that the defendant misappropriated funds obtained from investors for personal use and for the benefit of third parties closely affiliated with the defendant including the defendant's ex-wife and girlfriend. Id. at 7.

**B.    The SEC Lawsuit**

Prior to the instant criminal proceedings, the defendant's companies were the subject of a civil lawsuit brought by the Securities and Exchange Commission, Securities Exchange v. Utsick, et al., Case No. 06-cv-20975-PCH ("SEC lawsuit"). The SEC lawsuit resulted in a March 21, 2009 Order of Disgorgement against the defendant "in the amount of $5,077,188.15, representing the total of disgorgement, prejudgment interest, and the civil penalty." Final Judgment Setting Disgorgement and Prejudgment Interest and Imposing a Civil Penalty Against Defendant John P. Utsick (DE# 545 at 2 in Case No. 06-cv-20975-PCH, 5/22/09) ("Order of Disgorgement"). In the Court's findings of fact supporting the Order of Disgorgement, the Court found that a $307,500 payment made by one of the defendant's companies to attorney Michael Rosen did not qualify as "permissible advances or indemnification . . . under the Florida Statute § 607.0850 and w[ould] be disgorged."[1] Findings of Fact, Conclusions of Law and Final

---

[1] The defendant had argued that the money paid to Mr. Rosen "qualified as business expenses because they were advances to [the defendant] to indemnify him as

Judgment Ordering Disgorgement, Prejudgment Interest, and a Civil Penalty Against Defendant John P. Utsick (DE# 541 at ¶55 in Case No. 06-cv-20975-PCH, 5/19/09).[2]

## C.   The Defendant's Initial Appearance

In connection with this criminal case, the government commenced proceedings to extradite the defendant from Brazil and the defendant was taken into United States custody as a result of those extradition proceedings.[3]

On December 8, 2014, the defendant made his initial appearance in the United States District Court for the Southern District of Florida. See Transcript (DE# 101, 12/2/15). Attorney Michael Rosen filed a temporary appearance on behalf of the defendant. See Notice of Temporary Appearance as Counsel (DE# 17, 12/8/14). At the initial appearance, the government raised what it believed to be Mr. Rosen's conflict of interest in representing the defendant in the criminal proceedings in light of the Order of Disgorgement:

---

an officer or director of [the defendant's companies] under Florida Statute 607.0850. Findings of Fact, Conclusions of Law and Final Judgment Ordering Disgorgement, Prejudgment Interest, and a Civil Penalty Against Defendant John P. Utsick (DE# 541 at ¶55 in Case No. 06-cv-20975-PCH, 5/19/09).

[2] In the instant motion, the defendant asserts that these payments were made to Mr. Rosen, a criminal defense attorney, for legal services in 2005. See Defendant's Motion for Quinn Hearing to Compel Testimony of Witness or in the Alternative to Dismiss Charges upon Continued Refusal of Government to Confer Use Immunity (DE# 197 at 2, 5/20/16). The government maintains that the defendant used the money from the fraud scheme to pay Mr. Rosen and that the amount actually paid to Mr. Rosen was $550,000. See United States' Response in Opposition to Defendant's Motion For Quinn Hearing or in the Alternative to Dismiss Charges (DE# 203 at 2, 5/27/16).

[3] The defendant expresses numerous grievances with respect to the government's handling of the extradition process which are not the subject of the instant motion.

3

> [AUSA]: Well, thank you, Your Honor.
>
> I would like to note that I was discussed [sic] with counsel before this hearing that in that matter, **the Judge Huck matter that you referenced, on May the 19th of 2009, Judge Huck entered a Final Judgment in which he ordered, among other things, $307,500 that Mr. Rosen got from Mr. Utsick to be disgorged and none of that money was ever disgorged**, not one dime.
>
> And so the issue is, then, the interrelationship with the Judge Huck litigation and the issues presented in the bond because there was subsequent representations by Mr. Rosen to my office with regard to Mr. Utsick's financial condition, number one, and two, with regard to Mr. Utsick's willingness to submit to the authority of the United States before he fled to Brazil.
>
> So in light of the fact that we have now spent two years trying to extradite Mr. Utsick and **Mr. Rosen received money from the fraud, that money has been ordered returned. It has not been returned**. And in the communications I just referenced, **I think there is a conflict of interest with regard to Mr. Rosen that may have an interplay with regard to the bond issues that the Court just referenced because it is the same underlying lawsuit with Judge Huck**.
>
> And I think, for those reasons, the Court may – it may be that we should -- it may be that we should, in fact, if you are inclined to proceed, I certainly understand. The Government will be asking for pretrial detention and we will be asking for three days. It may make sense to hold this matter over, but we obviously serve at the Court's pleasure.

Transcript (DE# 101 at 5-6, 12/2/15) (emphasis added). The government further represented to the Court that if Mr. Rosen sought a permanent appearance, the government intended to file a motion to disqualify Mr. Rosen. Id. at 11.[4]

---

[4] Without citing any specific pages of the transcript, the defendant characterizes the Assistant United States Attorney's statements to the Court as:

> the government advis[ing] the Court that if Mr. Rosen remained on the case as Mr. Utsick's attorney, the government would bring a legal action against Mr. Rosen relating to the legal fees Mr. Utsick had paid him in 2005. . . . The government stated that these fees were for Mr. Utsick's criminal defense and had not been returned by Mr. Utsick or Mr. Rosen to

4

On December 18, 2016, Mr. Rosen moved to withdraw his temporary appearance in this case. See Withdrawal of Temporary Appearance as Counsel (DE# 20, 12/18/14).

According to the defendant, Mr. Rosen has requested immunity from the government:

> Mr. Rosen has . . . sought, through counsel, given the government threats, assurances from the government that it will bring no legal action against him based on his truthful testimony as a material witness with important testimony on Mr. Utsick's behalf relating to motions to dismiss the [Superseding] Indictment and at trial. In the alternative, if the government is actually conducting or considering an investigation against him as they threatened when he appeared in court to represent Mr. Utsick, then he has requested use immunity. The government referred his request to the prosecutors conducting this specific proceeding, who have refused to provide him either any assurances or use immunity or to acknowledge the conflicted position they have created.

Defendant's Motion for Quinn Hearing to Compel Testimony of Witness or in the Alternative to Dismiss Charges upon Continued Refusal of Government to Confer Use Immunity (DE# 197 at 7, 5/20/16).

The government disputes that Mr. Rosen has requested immunity. According to the government, an attorney for Mr. Rosen contacted the government seeking a legal opinion concerning Mr. Rosen's potential criminal exposure. See United States' Response in Opposition to Defendant's Motion For Quinn Hearing or in the Alternative

---

the government. The government advised the Court that if Mr. Rosen did not remain on the case to represent Mr. Utsick, then there would be no problem.

Defendant's Motion for Quinn Hearing to Compel Testimony of Witness or in the Alternative to Dismiss Charges upon Continued Refusal of Government to Confer Use Immunity (DE# 197 at 6-7, 5/20/16).

5

to Dismiss Charges (DE# 203 at 3, 5/27/16); see also Email (DE# 203-2, 5/27/16). The government declined to provide a legal opinion and Mr. Rosen did not request immunity. Id.

According to an email written by Mr. Rosen's attorney, after the initial appearance, the prosecutor had:

> told Mr. Rosen that [the prosecutor] had received approval from his supervisors and D.C. to come after Mr. Rosen for the legal fees he received from [Mr.] Utsick. Furthermore, in mid-October 2015, Mr. Rosen was told by a respected local criminal defense attorney that the [the United States Attorney's Office] had approved a criminal investigation of Mr. Rosen in connection with John Utsick.

See Email (DE# 203-2, 5/27/16). In a follow up email, Mr. Rosen's attorney wrote: "[the prosecutor] told Mr. Rosen that Joan Silverstein had authorized his office coming after Michael [Rosen] for his legal fees." Id.

The government has not granted immunity to Mr. Rosen or any other person in connection with the instant criminal proceedings. See United States' Response in Opposition to Defendant's Motion For Quinn Hearing or in the Alternative to Dismiss Charges (DE# 203 at 3, 5/27/16).

**D.   The Instant Motion**

On May 20, 2016, the defendant filed the instant motion. See Defendant's Motion for Quinn Hearing to Compel Testimony of Witness or in the Alternative to Dismiss Charges upon Continued Refusal of Government to Confer Use Immunity (DE# 197, 5/20/16). The government filed its response on May 27, 2016. See United States' Response in Opposition to Defendant's Motion For Quinn Hearing or in the Alternative to Dismiss Charges (DE# 203, 5/27/16). The defendant filed its reply in support of the

instant motion on May 31, 2016. See Defendant's Reply in Support of Motion for Quinn Hearing to Compel Testimony of Witness or in the Alternative to Dismiss Charges upon Continued Refusal of Government to Confer Use Immunity (DE# 205, 5/31/16). This matter is ripe for adjudication.

## ANALYSIS

At the outset, the undersigned notes that the government states that "the first step is for [Mr.] Rosen to appear at a hearing" to determine whether Mr. Rosen can assert a Fifth Amendment right by "articulat[ing] a reasonable basis for his concerns about criminal exposure." United States' Response in Opposition to Defendant's Motion For Quinn Hearing or in the Alternative to Dismiss Charges (DE# 203 at 3, 5/27/16). For purposes of the instant motion, the undersigned will assume, arguendo, that Mr. Rosen can and will properly assert a Fifth Amendment right and refuse to testify.

The defendant argues that, in the event Mr. Rosen properly asserts his Fifth Amendment right, the Court should "dismiss the [Superseding] Indictment unless the government provides [Mr. Rosen] with use immunity regarding his testimony at any proceeding in this case." Defendant's Motion for Quinn Hearing to Compel Testimony of Witness or in the Alternative to Dismiss Charges upon Continued Refusal of Government to Confer Use Immunity (DE# 197 at 9, 5/20/16).

Under Eleventh Circuit precedent, "'[f]ederal courts . . . have no authority to grant witnesses . . . use immunity. Congress has placed the power to grant use immunity exclusively in the Executive Branch.'" United States v. Merrill, 685 F.3d 1002, 1015 (11th Cir. 2012) (quoting Grand Jury Proceedings (Williams) v. United States, 995 F.2d 1013, 1017 (11th Cir.1993) (internal citations omitted)). The instant motion is premised

on a Third Circuit decision, United States v. Quinn, 728 F.3d 243 (3d Cir. 2013), which recognizes that "due process might compel a dismissal or a judgment of acquittal as a matter of law if the prosecutor in an act of flagrant and prejudicial misconduct refuses to grant a witness use immunity." United States v. Crithfield, No. 8:13-CR-237-T-23TBM, 2014 WL 7478427, at *2 (M.D. Fla. Jan. 6, 2015) (citing Quinn, 728 F.3d at 259-60). In such instances, the remedy fashioned by the Third Circuit is to "vacat[e] the conviction and allow[ ] a new trial where the Government can elect to exercise its statutory authority to obtain a grant of immunity for the witness" and "[i]f the Government refuses to immunize the witness in violation of the defendant's due process right, the trial court can dismiss the charges against the defendant." Quinn, 728 F.3d at 259-60.[5]

Quinn recognized two instances of prosecutorial misconduct where the remedy outlined above was warranted: (1) "when the Government acts with the deliberate intention of distorting the judicial fact finding process (for example, by threatening a defense witness)" and (2) where "the Government has refused to immunize a witness in order to keep clearly exculpatory and essential testimony from trial without a strong countervailing reason." Quinn, 728 F.3d at 247-48 (citation and internal quotation marks omitted).

Quinn is not binding on this Court and the defendant has failed to cite to any Eleventh Circuit precedent which would compel the Court to dismiss the Superseding

---

[5] Prior to Quinn, the Third Circuit was "the only Court of Appeals that permit[ted] a trial court to immunize a defense witness" where the government refused to grant use immunity to that witness. Id. at 247. In Quinn, the Third Circuit abandoned what it termed "judicial use immunity." Id. Nonetheless, it retained "the remedy for a due process violation" which "is a retrial where the Government can cure the distortion caused by its wrongdoing or face dismissal of the relevant charges." Id. at 247-48.

8

Indictment unless the government grants immunity to Mr. Rosen. Nonetheless, even if this Court were to follow Quinn, the defendant has failed to show he is entitled to the relief he seeks.

There are two tests outlined in Quinn. "Th[e] deliberate distortion test applies when the Government has taken steps to interfere with the testimony of a witness who would otherwise be available to the defense." Quinn, 728 F.3d at 258. This test applies, for example, where "the defendant can show that the Government's '[i]ntimidation or threats . . . dissuade[d] a potential witness from testifying' – that is, 'the [G]overnment's conduct . . . "substantially interfered" with a witness's choice to testify.'" Id. (quoting Lambert v. Blackwell, 387 F.3d 210, 260 (3d Cir. 2004)). The deliberate distortion test has also been used "in situations where prosecutors did not engage in overt threats or intimidation." Id.

The second test in Quinn is a five-part test which "capture[s] those situations where the Government, for tactical reasons, has used its power to threaten prosecution and withhold immunity to keep exculpatory and essential testimony from trial for no strong countervailing reason." Quinn, 728 F.3d at 259. In those instances, the Third Circuit explained that:

> to prove a due process violation on the basis of the Government's refusal to immunize a defense witness, the defendant must show the following five elements. "[1] immunity must be properly sought in the district court; [2] the defense witness must be available to testify; [3] the proffered testimony must be clearly exculpatory; [4] the testimony must be essential; and [5] there must be no strong governmental interests which countervail against a grant of immunity."

Id. at 261-62 (quoting Gov't of Virgin Islands v. Smith, 615 F.2d 964, 972 (3d Cir. 1980)). "This [five-part] test fleshes out, and thus complements, . . . [the] metric of

9

deliberate distortion." Id. at 259.

In his reply, the defendant argues that he does not need to meet the five-part test in Quinn because:

> Unlike the garden-variety and more difficult to discern implied witness intimidation case, where the prosecution simply exercises its discretion not to grant use immunity to a witness without accompanying diatribes in-court and in its pleadings, **the prosecutorial misconduct case presented here does not require the five-part evaluation discussed in Quinn for those scenarios**, which includes whether the witness' proffered testimony is exculpatory and essential. Rather, **the witness intimidation context presented here directly requires the government intrusion into the defendant's right to a fair trial to be remedied either by assuring the witness's testimony or by the court's dismissal of the charges**.

Defendant's Reply in Support of Motion for Quinn Hearing to Compel Testimony of Witness or in the Alternative to Dismiss Charges upon Continued Refusal of Government to Confer Use Immunity (DE# 205 at 1-2, 5/31/16) (emphasis added). Nonetheless, the defendant also maintains that he meets the five-part test. Id. at 4.

The defendant fails to meet the deliberate distortion test because he fails to show that the government substantially interfered with Mr. Rosen's decision to testify. The defendant has failed to show any misconduct by the government with respect to Mr. Rosen. This is not a case where the government has strategically employed its power to grant or deny immunity to manipulate the available evidence at trial or in other proceedings. The government represents that to date, no witness has been granted immunity in the instant criminal proceedings. See United States' Response in Opposition to Defendant's Motion For Quinn Hearing or in the Alternative to Dismiss Charges (DE# 203 at 3, 5/27/16).

The record evidence shows that at the initial appearance, the prosecutor pointed

out an inherent conflict of interest with Mr. Rosen representing the defendant in the instant criminal proceedings, namely, Mr. Rosen being the recipient of funds obtained through the fraudulent scheme charged in the indictment. There is nothing coercive or intimidating in the statements made by the government at the initial appearance or in the government's refusal to provide Mr. Rosen with a legal opinion concerning criminal exposure. Nor was there anything inappropriate in the prosecutor communicating to Mr. Rosen that his office had authorized "coming after" Mr. Rosen for the legal fees he accepted from the defendant.

"While no court should ever tolerate governmental intimidation of witnesses or unfair interference with a defendant's right to put on a defense, courts must be equally vigilant not to penalize legitimate and appropriate indications to a witness that the government fairly entertains a real possibility of charging that witness with criminal activity regarding the subject matter of the witness's expected testimony." United States v. Perraud, No. 09-60129-CR-ZLOCH, 2010 WL 298601, at *17 (S.D. Fla. Jan. 20, 2010). "Nothing requires the government, as a price for pursuing one conviction, to immunize or otherwise forego the prosecution of another legitimately-viewed potential defendant simply because the government has in some way appropriately indicated that potential defendant's status as such." Id.

The defendant also fails to meet the five-part test in Quinn because he cannot show that Mr. Rosen's testimony is "clearly exculpatory." Testimony is "clearly exculpatory" if "it would exonerate or free [the defendant] of guilt or blame. Quinn, 728 F.3d at 262. In his motion, the defendant asserts that Mr. Rosen's "testimony is both exculpatory and essential for Mr. Utsick regarding the charges in the Indictment as well

11

as to support dismissal of the Indictment pre-trial pursuant to Mr. Utsick's pending motions to dismiss." Defendant's Motion for Quinn Hearing to Compel Testimony of Witness or in the Alternative to Dismiss Charges upon Continued Refusal of Government to Confer Use Immunity (DE# 197 at 1, 5/20/16). The defendant stated that "[a] proffer of [Mr. Rosen's] testimony w[ould] be provided ex parte to the Court under separate cover for an in camera review by the Court." Id. at 1 n.2. To date, no such proffer has been filed by the defendant and the undersigned declines to speculate how an attorney's testimony would provide clearly exculpatory evidence in a prosecution for mail fraud. The only glimpse into what Mr. Rosen could possibly testify to is in the defendant's reply which merely notes that: "the witness interacted directly with the Receiver and his Akerman Fort Lauderdale partners, and interacted with the Defendant's other lawyers and accountants, and with the prosecution during events that the government is citing as relevant in its pleadings and as justification for its actions." Defendant's Reply in Support of Motion for Quinn Hearing to Compel Testimony of Witness or in the Alternative to Dismiss Charges upon Continued Refusal of Government to Confer Use Immunity (DE# 205 at 4, 5/31/16). The defendant's general description of what Mr. Rosen could have observed falls well below the "clearly exculpatory" requirement of Quinn.

It is impossible for the Court to determine whether Mr. Rosen's testimony is "clearly exculpatory" without knowing what Mr. Rosen would testify to if called at trial or in any other proceeding in this case. The defendant's failure to disclose the contents of Mr. Rosen's testimony dooms his motion. See Quinn, 728 F.3d at 263 (stating "we cannot conclude that [the co-defendant]'s testimony was clearly exculpatory. Because

[the defendant] has not made this showing, we do not need to consider whether [the co-defendant]'s testimony was essential or whether the Government had a strong countervailing interest for refusing to grant [the co-defendant] immunity.").

## CONCLUSION

In accordance with the foregoing, it is

ORDERED AND ADJUDGED that the Defendant's Motion for Quinn Hearing to Compel Testimony of Witness or in the Alternative to Dismiss Charges upon Continued Refusal of Government to Confer Use Immunity (DE# 197, 5/20/16) is **DENIED**.

DONE AND ORDERED in Chambers at Miami, Florida this **2nd** day of June, 2016.

_____
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies provided to:
United States District Judge Altonaga
All counsel of record